MR. JUSTICE SHEEHY
concurring in part and dissenting in part:
I concur with the majority that the mother should not have custody of a child of tender years as a matter of presumption. However, the majority opinion does not state, as I think it should, that when a child is of tender years in a custody dispute, the tender age of the child should be a factor in considering whether custody should be given to the mother.
As to the rest of the opinion, I dissent.
The wife did not come to this appellate court contending that the District Court had not made findings on the criteria in section 40-4-212(4), MCA that are set out in the majority opinion. The wife does not contend for that in this appeal at all. Rather, the wife contended that as between the mother and the father, “the trial court [had] specifically found that all things are equal between the parties” and that in that situation, the presumption entitled the mother to the custody of the minor child. In the language of the wife’s brief, her contention under section 40-4-212 was:
“If the presumption that the mother is entitled to custody of children of tender years is to have any bearing at all, surely in this *379 case where all things not only were equal but also were declared so by the court, custody must reside in the mother ...”
The majority is therefore reversing the District Court on issues not raised by the wife and moreover, not substantiated by evidence in the record at the trial.
For example, the majority refers to the “interaction and interrelationship of the child with his parent” and states that the findings with respect to the father were sufficient but are insufficient with respect to the mother. The reason that the District Court can make no findings with respect to the interrelationship of the child with the mother, and the maternal grandparents, is that for some reason not disclosed by the record, the mother offered no evidence of how her child was reacting to the family environment in Portland where the child had been residing with the mother and the maternal grandparents at the time of the trial. Thus, the decision of the District Court here in favor of the father is being reversed out of the failure of the mother to produce the evidence which this Court says should result in findings.
Nor do I agree that the trial court did not consider the mental and physical health of all the individuals involved. The mother made a point during the trial that her husband had not kept the child’s glasses on the child when he had temporary custody. The father refuted this by producing eighteen pictures of himself with Eric, all showing the child wearing his glasses. The father’s health is evident from the fact that he is an active farmer near Laurel, working long hours in pursuing his occupation. The mother’s health indicated that she had had a very difficult labor in the childbirth of Eric; that she had gone to the hospital after using hashish; that she was diagnosed as manic depressive at the time; that she had been on a number of medications which her second doctor thought were unnecessary; that she “couldn’t stand sitting at home” after the baby was born, volunteered to do nursing work at Planned Parenthood, and celebrated this occupation by going out with a Mr. Schuster and buying him a bottle of wine. It was during her evening with Mr. Schuster that the hashish incident *380 happened and she was removed to the hospital. I think the court fully considered her health in determining the custody of Eric.
Nor do I construe the District Court’s placing custody of Eric with the father in Montana implicitly meant that Montana was a better place than Oregon to raise children. The finding of the District Court provides in part:
. . that in the immediate area of the respondent’s home are the respondent’s father and mother and the respondent’s brother and sister-in-law together with their children; that during the course of the marriage the sister-in-law baby-sat the minor child from time to time; that the entire Markegard family is well thought of in the community, is a good and substantial family, and are all concerned as to the welfare of the minor child and his opportunity to grow up within the family; to grow up with his cousins, his uncles and aunts, and his grandparents; that the welfare of the child would be best promoted by having an opportunity to grow up in the environment of the Markegard community. The interst of the Markegard family in the welfare of the minor child is so great that a number of the aunts and uncles traveled to Portland, Oregon, on two occasions to visit the child, in the custody of the mother, during the year 1979.”
I do not derive any implicit statement that Montana is a better place to grow up than Oregon from the above finding. In the face of the lack of evidence regarding the Oregon environment for this child, the court had no choice but to decide that the Laurel community was in the best interests of the child.
What the District Court did in this case was to choose between certainty and uncertainty. If this Court had granted custody to the mother, I should have been greatly concerned about the uncertainty of the mother’s occupation, her ability to cope with pressure situations, of the situation at the home of the maternal grandparents, from which home both the mother and her sister departed because of the unrefuted contention of the mother that her parents were “crazy”.
For the foregoing reasons, I would sustain the custody decision of the District Court.